UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ADVOCATE CAPITAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:06-0847 |
| ) | Judge Echols |
| LAW OFFICE OF A. CLARK CONE, ) | |
| P.A., A. CLARK CONE and ) | |
| TAYA CONE, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the Court is the "Application of Plaintiff, Advocate Capital, Inc. for Preliminary Injunction and Turn Over of Collateral" (Docket Entry No. 5), to which Defendants have not responded. An evidentiary hearing was held on November 13, 2006 at which time Plaintiff presented evidence, but Defendants failed to appear.

### I. FINDINGS OF FACT

At the evidentiary hearing the Court heard from one witness, William Todd Jackson ("Jackson"), the Credit Compliance Officer of Advocate Capital, Inc. His brief testimony was limited to explaining the general nature of the loan agreement between the parties, how it was collateralized, when payments were due, and introducing the amended loan and security agreement, the sole exhibit at the hearing. His testimony, together with the record before the Court, shows the following to be the relevant facts.

Advocate Capital is in the business of loaning operating funds to law firms representing plaintiffs in contingency cases so that

1

the firms can pay the plaintiffs' legal expenses in preparing the case for trial. To promote its business, Advocate Capital advertises in trade journals, attends lawyers' conferences, and has five sales representatives who try to find prospective customers. Advocate Capital has customers in twenty states and conducts its business from an office located in Brentwood, Tennessee.

On August 2, 2002, the Law Office of A. Clark Cone, P.A. (the "Law Office"), as borrower, and A. Clark Cone ("Mr. Cone"), as guarantor, entered into a Master Loan and Security Agreement with Advocate Capital. Those same parties, along with Taya Cone ("Ms. Cone"), as an additional guarantor, entered into an Amended and Restated Master Loan and Security Agreement on August 2, 2005. Mr. Cone also entered into a separate Guarantee with Advocate Capital on August 2, 2002, as did Ms. Cone on September 28, 2004. These documents represent the agreement between the parties (collectively "the Agreements").

Under the Agreements, the Law Office was loaned money to finance the legal expenses on certain approved contingency cases. As those cases were settled, dismissed or tried, a percentage of the outstanding principal and interest on the balance of the loans made was to be paid to Advocate Capital. Additionally, under the terms of the Agreements, the total principal and interest owing on the loans were were due and owing on August 2, 2006. The funds advanced were secured by all the Law Office's accounts receivable.

Throughout the course of the loans made under the Agreements, no payments on the principal were made, although Defendants consistently made interest payments. Defendants continued to make interest only payments, even though some of the cases on which the loans had been made settled or had otherwise been closed and certain payments on the principal balance were due and owing. There was no explanation at the hearing about why the law firm was permitted to operate under these interest only terms for approximately four years.

On August 11, 2006, Advocate Capital made a demand on the Defendants for immediate payment in full of all obligations, including all outstanding principal, interest, fees, costs, and expenses owed under the Agreements. After the demand, the Defendants ceased making any payments, including interest payments.

As of August 31, 2006, Defendants owed Advocate Capital the principal amount of $325,000.00, together with interest, fees, costs and expenses as provided for under the Agreements. All totaled, the sum owed is approximately $344,000.00.

Plaintiff seeks a preliminary injunction which would prevent Defendants or those acting in concert with them from using or disposing of any of the Law Office's accounts receivables, general intangibles, payment intangibles and any similar rights, as well as an order which would require Defendants to turn over such assets and records of same to the Plaintiff.

3

## II. **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 65(b), the Court may grant a preliminary injunction if it clearly appears from specific facts shown by testimony, affidavits or a verified complaint that immediate and irreparable injury, loss or damage will result to the applicant. In deciding whether to grant a preliminary injunction, the Court must consider four factors: (1) whether the party seeking the order has a strong likelihood of prevailing on the merits of the case; (2) whether the moving party will suffer irreparable injury if the order is not entered; (3) the potential harm the order would cause others; and (4) the public interest. See Leary v. Daeschner, 228 F.3d 729, 736 (6th Cir. 2000). "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met". Six Clinics Holding Corp., II, 119 F.3d 393, 400 (6th Cir. 1997).

## III. **APPLICATION OF LAW**

Balancing the four applicable factors, the Court finds that Plaintiff has not carried its burden to support the extraordinary relief it seeks.

### A. **Likelihood of Success on the Merits**

"In order to establish a likelihood of success on the merits of a claim, a plaintiff must show more than a mere possibility of success." Six Clinics Holding Corp., II v. CAFCOMP Systems, 119 F.3d 393, 407 (6th Cir. 1997). "However, it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make

4

them fair grounds for litigation and thus for more deliberate investigation." Id.

In this case, Plaintiff has established a likelihood of success on the merits. The evidence shows the parties entered into Agreements whereby Plaintiff loaned Defendants money for a particular purpose, under specific terms, and collateralized by the law firm's account receivables. Defendants agreed to the terms of the Agreements, but made interest only payments for approximately four years until Plaintiff declared a default under the Agreements and demanded payment in full. The Court finds that this factor weighs in Plaintiff's favor.

**B. Irreparable Harm**

"'As a general rule, a movant has not established irreparable harm where damages would adequately compensate the movant for the asserted harm.'" Performance Unlimited, Inc. v. Questar Publishers, Inc., 52 F.3d 1373, 1381 (6th Cir. 1995)(citation omitted). In this case, it is beyond cavil that Plaintiff can be made whole by the payment of money damages in the amount of principal, interest, costs, and expenses provided for in the Agreements.

Plaintiff has presented no evidence regarding irreparable harm, other than a conclusory statement included in Taussig's declaration that "[w]ithout the granting of injunctive relief, Advocate would suffer irreparable injury." (Taussig Decl. ¶ 11). Although counsel argued at the hearing that irreparable harm exists because Advocate Capital's collateral, the accounts receivables, are being dissipated, there was absolutely no proof of this fact.

5

Jackson, Plaintiff's credit compliance officer, did not know the status of the law firm's account receivables. He testified he had not visited the law firm or talked with any of its members and did not know of its financial condition.

Certainly, the possibility of dissipating assets so that funds no longer exist in order to compensate the Plaintiff can establish irreparable harm. See, In re Focus Media, Inc., 387 F.3d 1077, 1086 (9th Cir. 2004)(bankruptcy court properly entered preliminary injunction where evidence showed that assets were being dissipated by primary shareholder); Elliott v. Kiesewetter, 98 F.3d 47, 58 (3d Cir. 1996)("That irreparable harm would occur absent an asset freeze is even more apparent where the very assets subject to a potential judgment will likely be dissipated without entry of the order"). However, in this case, there is not a scintilla of evidence that any funds are being dissipated. In fact, there was no proof about the law firm, its operations, its accounts receivable, or financial condition or why it quit making interest payments. For all the Court knows, the Law Office of A. Clark Cone is a thriving practice in West Palm Beach; and A. Clark Cone and Taya Cone are wealthy guarantors who chose not to pay the debt owed to Advocate Capital for unexplained reasons.

The Court cannot accept, without more, Plaintiff's bald assertion in its brief that "[t]he Law Firm is currently insolvent" and that the mere failure to pay demonstrates insolvency. Although this may be true, the Court requires proof upon which to base its decisions, especially when the request is for extraordinary relief.

6

Case 3:06-cv-00847   Document 30   Filed 11/29/06   Page 6 of 10 PageID #: 200

First, there is no evidence that the Law Firm is insolvent. While counsel stated at the hearing that foreclosure proceedings had been instituted against the Cones, such a statement is not evidence. In fact, as previously stated, the only evidence before the Court is that Jackson, the Compliance Officer, has no knowledge of the present financial condition of any of the Defendants or the operation of the law firm. He knows only that Defendants have not made payments to Advocate Capital.

Second, the bankruptcy code provision which Plaintiff quotes for the proposition that "insolvent means . . . unable to pay its debts as they become due" relates to one of the two alternative definitions for the solvency of a municipality, and none of the Defendants are municipalities. Yet even in regard to municipalities, the bankruptcy code requires that the municipality's financial condition be such that it is unable to pay its debts, not merely that it has not made payments. 11 U.S.C. § 101(32)(C)(ii). As for other entities, the code generally requires an assessment of the entity's financial condition in terms of its debts and the property it owns. 11 U.S.C. 101(32).

Third, while Plaintiff correctly quotes <u>Monfardini v. Quinlan</u>, 2003 WL 213842642 at *3 (N.D. Ill. 2003) as stating "[a] defendant's potential or actual insolvency is a 'standard ground' for determining that an award of damages is inadequate," the court further stated, in the very next sentence that "[w]hether the plaintiff will suffer irreparable harm where it is unable to collect money damages depends on the defendant's resources and the

7

potential magnitude of the damage award after trial." Id. Defendants' resources in this case are unknown.

The Court has no evidence before it from which it could conclude that Plaintiff will suffer irreparable injury should an injunction not issue. Accordingly, this factor weighs against granting extraordinary relief.

**C. <u>Substantial Harm To Others</u>**

The third factor the Court must consider is whether the issuance of a preliminary injunction will cause "substantial harm to others." <u>Leary</u>, 228 F.3d at 736. "This requires a court to balance the harm a plaintiff would suffer if its request for a preliminary injunction was denied with the harm the defendants would suffer if they were to be temporarily enjoined." <u>Sawyer</u>, 2006 WL 1638537 at *8.

This Court has already found it cannot determine whether the Plaintiff will suffer irreparable harm if a preliminary injunction is not issued. As for harm to the Defendants, that too is unknown. The only evidence the Court has before it is an unadorned conclusion by Taussig that "[w]ithout the granting of injunctive relief, Advocate would suffer irreparable injury." (Taussig Decl. ¶ 10).

Given the broad relief sought by Plaintiff, it could very well be that an injunction would cripple Defendants' ability to render legal services during the pendency of this action. While the Court recognizes that Plaintiff appears to be entitled to reimbursement based upon the money it has loaned to fund the expenses on specific

8

cases, the Court cannot determine what impact an injunction would have on Defendants' practice as it relates to other cases and clients for which Plaintiff has not advanced monies. Since the Court is not only to consider the harm to the parties before it, but also must "assess the impact a preliminary injunction might have on relevant third parties," Sawyer, 2006 WL 1638537 at *8, the Court cannot conclude that this favor weighs in factor of granting an injunction.

**D. Public Interest**

The last factor in determining whether to grant a preliminary injunction "asks whether the public interest is advanced in issuing" the order. National Hockey League Players Ass'n v. Plymouth Whalers Hockey Club, 372 F.3d 712, 720 n. 4 (6th Cir. 2003). Under Tennessee law, "parties are free to contract as they see fit" and courts are to "defer to the contracting process by enforcing contracts according to their plain terms." Seraphine v. Aqua Bath Co., 2003 WL 1610871 at *9 (Tenn. Ct. App. 2003). Because the public has an interest in protecting and preserving the integrity of contracts in Tennessee, this factor weighs in favor of the issuance of a preliminary injunction.

**E. Summary of Factors**

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." Overstreet v. Lexington-Fayette Urban County Gov't., 305 F.3d 566, 573 (6th Cir. 2002). While Plaintiff has shown it has a likelihood of success

9

on the merits and that the public interest would be served by enforcing the contract between the parties, it has not shown that it will suffer immediate or irreparable injury or that others will not be substantially harmed by the issuance of an injunction. Given the paucity of evidence in the record, the Court cannot conclude that Plaintiff is entitled to the extraordinary remedy it seeks.

## IV. CONCLUSION

On the basis of the foregoing, the Application for Preliminary Injunction and Turn Over of Collateral (Docket Entry No. 5) will be denied.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE